# UNITED STATES DISTRICT COURT

# DISTRICT OF IDAHO

| | |
|---|---|
| BROOKS M. WITZKE,<br><br>    Plaintiff,<br><br>vs.<br><br>IDAHO STATE BAR,<br><br>ROBERT A. BERRY, individually and in his official capacity as a DEPUTY ATTORNEY GENERAL FOR THE STATE OF IDAHO,<br><br>LAWRENCE G. WASDEN, individually and in his official capacity as the ATTORNEY GENERAL FOR THE STATE OF IDAHO,<br><br>KRISTIN L. BJORKMAN, individually and in her official capacity as the PRESIDENT OF THE IDAHO STATE BAR BOARD OF COMMISSIONERS,<br><br>JOSEPH N. PIRTLE, individually and in his official capacity as the IDAHO STATE BAR COUNSEL,<br><br>MITCHELL W. BROWN, individually and in his official capacity as the DISTRICT COURT JUDGE FOR THE COUNTIES OF CARIBOU, BEAR LAKE, FRANKLIN, and BANNOCK, COUNTIES WITH THE SIXTH JUDICIAL DISTRICT OF THE STATE OF IDAHO,<br><br>THE COUNTY OF CARIBOU, IDAHO,<br><br>THE COUNTY OF FRANKLIN, IDAHO,<br><br>THE COUNTY OF BEAR LAKE, IDAHO,<br><br>    Defendants. | Case No. 1:22-cv-00478-REP<br><br>**MEMORANDUM DECISION AND ORDER RE:**<br><br>**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION (Dkt. 3)**<br><br>**PLAINTIFF'S MOTION IN LIMINE (Dkt. 44)** |

**ORDER - 1**

Pending before the Court is Plaintiff's Motion for Preliminary Injunction and Expedited Hearing as soon as Practicable (Dkt. 3) (the "PI Motion") and Plaintiff's Motion in Limine to Prohibit Oral Testimony at the Preliminary Injunction Hearing and Motion to Declare Certain Facts Conclusively Established (Dkt. 44) (the "Motion in Limine").  All parties have consented to the exercise of jurisdiction by a United States Magistrate Judge.  (Dkt. 32).  For the reasons stated below, the PI Motion is denied on the merits and the Motion in Limine is denied as moot.

## I. BACKGROUND[1]

A.  The Bar Application Process

This matter concerns the various procedural steps a bar applicant must take before receiving a final decision on the merits of their application.  As such, the following context is helpful to understanding the PI Motion and Plaintiff's requested relief.

The Idaho State Bar ("ISB") administers the Idaho Bar Examination (the "bar exam") in February and July each year.  I.B.C.R.[2] 203(b).  To sit for the February bar exam, applications must be submitted by October 1, and late applications are accepted until November 15 with the payment of an additional fee.  I.B.C.R. 203(b), (c)(2)(A).  Similarly, to sit for the July bar exam, an application must be submitted by March 1, but late applications (with a fee) are accepted until April 15.  I.B.C.R. 203(b).

---

[1] The Court recounts the following exclusively for purposes of deciding the PI Motion.  To the extent background information recited here may be disputed, it should not be considered conclusively established for purposes of this case, as resolution of disputed facts is a matter for trial.  *See Perlot v. Green*, Case No. 3:22-cv-00183-DCN, 2022 WL 2355532, at *6 (D. Idaho June 30, 2022) ("in deciding a motion for preliminary injunction, the district court is not bound to decide doubtful and difficult questions of law or disputed questions of fact") (internal quotation marks omitted).

[2] Citations to "I.B.C.R. __" refer to the Idaho Bar Commission Rules.

**ORDER - 2**

Applicants must provide information relating to their character and fitness to practice law, and when their responses to questions on the bar application implicate eligibility criteria relating to character and fitness, their applications may be referred to the Character and Fitness Committee of the ISB ("CF Committee"). Pirtle Dec., Ex. C ¶¶ 2-3, 7-8 (Dkt. 41-1); *see* I.B.C.R. 208(b) ("The Board [of Bar Commissioners] may refer any Application to the CF Committee[.]"). The CF Committee has the authority to require, upon reasonable notice, an applicant to appear for a Character and Fitness Examination ("Rule 208 examination"). I.B.C.R. 208(c). Further, the CF Committee has the authority to "approve or recommend denial or conditional admission of an Applicant" by majority vote. I.B.C.R. 209(f).

If the CF Committee recommends denying an application, the ISB Board of Commissioners (the "Board") may then vote to (i) approve the application, (ii) deny or modify the application, (iii) recommend conditional admission, or (iv) order further investigation. I.B.C.R. 215(a). Following notice of an order of the Board denying their application, the applicant may then request a show cause hearing by filing a written petition with the executive director of the ISB within twenty-one days. I.B.C.R. 215(d). A show cause hearing "shall be scheduled at a time convenient to the Applicant and the Board" and the Board must issue a decision within fourteen days of receipt of the hearing transcript. I.B.C.R. 215(f)(1), (g).

Finally, if the Board decides to deny an application following a show cause hearing, an applicant may then file a petition for review with the Idaho Supreme Court within twenty-one days of receiving notice of the adverse decision. I.B.C.R. 216(a), (d). The Board has fourteen days to respond to this petition. I.B.C.R. 216(f). The Idaho Supreme Court then reviews the Board's decision under an arbitrary and capricious standard of review. I.B.C.R. 216(b). There is

**ORDER - 3**

no requirement that the Supreme Court issue a decision within a specified amount of time following the filing of a petition for review.

Considering the above, an applicant flagged for character and fitness review may face the following procedural steps before receiving a final decision on their application: (i) referral to the CF Committee to conduct a Rule 208 examination, (ii) a vote and recommendation from the CF Committee to deny the application, (iii) review of the CF Committee's recommendation by the Board and a written order denying the application, (iv) requesting and participating in a show cause hearing, (v) issuance of a written decision by the Board within fourteen days of the show cause hearing, and (vi) filing a petition for review before the Idaho Supreme Court. The only step in this process with a definitive deadline for the Board is the requirement that the Board issue a written decision within fourteen days of the show cause hearing.

B. Plaintiff's Application

Plaintiff filed his bar application on April 11, 2022, to sit for the July 2022 Idaho Bar Examination. Compl. ¶ 22 (Dkt. 1). On June 17, 2022, the Idaho State Bar ("ISB") sent Plaintiff a letter, notifying him that his application had been deferred from the July 2022 bar exam to the February 2023 bar exam. Compl., Ex. 3 (Dkt. 1-12). Further, the ISB informed Plaintiff that his application had been deferred because the CF Committee had voted to have Plaintiff appear for a Rule 208 examination, and the deferral was needed "to allow sufficient time to schedule and complete the examination, prepare the transcript from the examination, and allow the CF Committee sufficient time to evaluate the information." Compl., Ex. 4 (Dkt. 1-12).

Shortly thereafter, Plaintiff filed a lawsuit in this Court as well as an emergency motion for a Temporary Restraining Order and Preliminary Injunction. *See Witzke v. Wilde, et al.*, 4:22-

**ORDER - 4**

cv-253-REP.[3] Plaintiff requested similar relief to what he has requested here, generally speaking, an order from this Court directing Defendants to expedite the process described above so that he may have a final decision on his application prior to the July 2022 bar exam. *See Id.* Dkt. 2. At that time, Plaintiff's principal allegation of injury was that deferring his application to the February 2023 bar exam would result in him being unable to transfer his passing Multistate Bar Examination ("MBE") score from another jurisdiction.[4] *Id.*

On July 1, 2022, the Court held a hearing on Plaintiff's motion for a temporary restraining order. Injunctive relief was not necessary, however, because the case was voluntarily dismissed after the Parties reached an agreement that allowed Plaintiff to retain his passing MBE score for the February 2023 bar exam. Namely, Defendants agreed not to oppose Plaintiff's motion to the Idaho Supreme Court to extend the thirty-seven-month deadline for the transferability of his MBE score. The expectation was that Defendants would process Plaintiff's application prior to the February bar exam, so that Plaintiff could either sit for the February bar and make use of his passing MBE score, or appeal an adverse decision of the Board to the Idaho Supreme Court prior to the expiration of MBE score.

Plaintiff's application remained pending and the CF Committee scheduled a Rule 208 examination for August 22, 2022. Pirtle Dec. ¶ 8 (Dkt. 41-1). The Rule 208 examination took close to a full day, and the CF Committee received the hearing transcript on September 6, 2022.

---

[3] The Court takes judicial notice of this case under Federal Rule of Evidence 201(b). *See Pimentel-Estrada v. Barr*, 458 F. Supp. 3d 1226, 1238 n.7 (W.D. Wash. 2020) ("The Court can take judicial notice of records in other cases.").

[4] Plaintiff received a passing MBE score after taking the Delaware bar exam in 2019. Compl. ¶ 29. IC.B.R. 217(d) allows applicants to "transfer an MBE score from any jurisdiction if taken within the last 37 months prior to the date of the Idaho bar examination for which they are applying." Thus, deferring Plaintiff's Idaho bar exam date to February 2023 would remove his 2019 passing MBE score from the window of transferability.

**ORDER - 5**

*Id.* ¶ 10.  Starting September 13, 2022, the ISB began reaching out to CF Committee members (the Committee is composed of volunteers) for their availability to meet and vote on Plaintiff's application.  *Id.* ¶ 11.  The CF Committee met on October 13, 2022, and voted to recommend denial of Plaintiff's application.  *Id.* ¶ 12.  The CF Committee proceeded to draft its written findings of fact, conclusions of law, and recommendation.  *Id.* ¶ 14.  This written recommendation was submitted for Board review on December 5, 2022.  *Id.* ¶ 15.  The Board then considered the recommendation and voted to deny Plaintiff's application at its regularly-scheduled December 9, 2022, meeting.  *Id.* ¶ 17.  The Board has yet to issue a written decision denying Plaintiff's application, but the Court understands that a decision is imminent.

Between October 13 and November 9, 2022, Plaintiff engaged in multiple communications with Defendants expressing his concerns that his application would not be processed in time for the February bar exam and his belief that due process required a final decision on his application before that time.  *See* Compl., Exs. 7, 9-12, 15 (Dkt. 1-12).  Then, on November 19, 2022, Plaintiff filed this lawsuit and corresponding PI Motion seeking this Court to (i) order Defendants[5] to issue a prompt decision on his bar application and (ii) order Defendants to schedule a show cause hearing within fourteen days of any order denying his application.  Compl. (Dkt. 1), PI Mot. (Dkt. 3).

Following Defendants' appearances and consents, the Court ordered an expedited briefing schedule on Plaintiff's PI Motion and held a hearing on the same December 20, 2022.  Plaintiff also filed a Motion in Limine the day before the motion hearing, seeking to prevent Defendants from offering oral testimony and to have the Court declare certain facts as conclusively established for purposes of the PI Motion.  Mot. in Limine (Dkt. 44).  The Court

---

[5] Specifically, Plaintiff only seeks injunctive relief against Defendants Bjorkman and Pirtle.

**ORDER - 6**

again ordered an expedited briefing schedule, with Defendants required to respond the same day. (Dkt. 45). Now, having thoroughly reviewed the record, considered oral argument, and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

## II. DISCUSSION

### A. *Younger* Abstention is Inapplicable

As a threshold matter, Defendants assert that this Court should decline to exercise jurisdiction under the *Younger* abstention doctrine.[6] Resp. to PI Mot. at 7-12 (Dkt. 41). Plaintiff asserts that *Younger* abstention is inapplicable for a variety of reasons, and, even if it applied, an exception to abstention exists. Reply in Supp. of PI Mot. at 1-2 (Dkt. 42).

*Younger* abstention is a narrow exception to the "virtually unflagging" obligation of federal courts to exercise properly invoked jurisdiction. *Arevalo v. Hennessy*, 882 F.3d 763, 765 (9th Cir. 2018). The doctrine rests on principles of comity, such as "a proper respect for state functions, . . . the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982). Abstention is appropriate under *Younger* when:

> (1) there is an ongoing state judicial proceeding; (2) the proceeding implicates important state interests; (3) there is an adequate opportunity in the state proceedings to raise constitutional challenges; and (4) the requested relief seeks to enjoin or has the practical effect of enjoining the ongoing state judicial proceeding.

*Page v. King*, 932 F.3d 898, 901-02 (9th Cir. 2019) (citing *Arevalo v. Hennessy*, 882 F.3d 763, 765 (9th Cir. 2018)). If these threshold elements are met, a federal court may still decline to

---

[6] *Younger v. Harris*, 401 U.S. 37 (1971).

**ORDER - 7**

abstain if there is "a showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate." *Id.* (internal quotation marks omitted). Plaintiff contends that Defendants have not made an adequate showing on any of the above elements. Reply in Supp. of PI Mot. at 3-6 (Dkt. 42). In the alternative, he asserts that this Court should not abstain because Defendants have acted in bad faith and harassed him, and other extraordinary circumstances exist to justify federal court intervention. *Id.* at 8-9.

  1. *State judicial proceedings were ongoing at the time Plaintiff filed his complaint*

Plaintiff contends that there were no ongoing judicial proceedings at the time he filed his complaint because, at that point in time, his application was being considered by the CF Committee, not the Board. *Id.* at 3-4. Specifically, he argues that proceedings before the CF Committee do not qualify as "judicial proceedings" because the CF Committee only has the power to recommend denial of an application. *Id.* at 4. Plaintiff's argument is unavailing.

Courts analyze *Younger* abstention "in light of the facts and circumstances existing at the time the federal action was filed." *Rynearson v. Ferguson*, 903 F.3d 920, 924 (9th Cir. 2018). State proceedings are ongoing if "if they are initiated before any proceedings of substance on the merits have taken place in the federal court." *Nationwide Biweekly Admin., Inc. v. Owen*, 873 F.3d 716, 728 (9th Cir. 2017) (internal quotation marks omitted).

Bar admission proceedings are judicial in nature. *See D.C. Ct. of App. v. Feldman*, 460 U.S. 462, 478-79 (1983). The analysis of whether a proceeding is judicial does not turn on the identity of a particular actor (or their ability to issue a final decision), but on whether the process involves a "judicial inquiry" requiring some governmental body to "investigate, declare, and enforce 'liabilities as they [stood] on present or past facts and under laws supposed already to exist." *Id.* at 479. Thus, by filing an application for admission, the applicant is initiating a

**ORDER - 8**

judicial proceeding because the Board is required by law to examine and investigate each applicant for compliance with Idaho's bar admission rules. IDAHO CODE § 3-408. The fact that the Board may delegate some of this authority to the CF Committee is of no moment. The nature of the inquiry remains the same – the determination of an applicant's eligibility to sit for the bar exam based on then-existing facts applied to then-existing law. Accordingly, state judicial proceedings were ongoing at the time Plaintiff filed this action even though his application was being reviewed by the CF Committee and not the Board. The first element of *Younger* is satisfied.

    2. *Plaintiff's bar admission proceedings implicate important state interests*

Plaintiff's only argument that important state interests are not implicated is that, because (in his view) there were no ongoing proceedings, any interest in regulating admission to the bar had not yet come into play. Reply in Supp. of PI Mot. at 5 (Dkt. 42). This is not persuasive in light of the above analysis concluding that state judicial proceedings were ongoing. Further, it is well-settled that states have "an extremely important interest in maintaining and assuring the professional conduct of the attorneys [they] license[]." *Hirsh v. Justices of the Supreme Ct. of Cal.*, 67 F.3d 708, 712-713 (9th Cir. 1995) (quoting *Middlesex*, 457 U.S. at 434). The Court finds that the second element of *Younger* is met.

    3. *There is not an adequate opportunity for Plaintiff to litigate his specific constitutional challenges*

Next, Plaintiff argues that he does not have an adequate opportunity to raise his procedural due process concerns regarding the delay in his application because it is precisely that delay that precludes him from seeking review before the Idaho Supreme Court. Reply in Supp. of PI Mot. at 5-6 (Dkt. 42).

**ORDER - 9**

The burden rests with Plaintiff to demonstrate that he cannot adequately raise constitutional claims in the ongoing state proceedings. *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1,14 (1987). Generally, state courts are presumed to provide a sufficient opportunity to raise constitutional claims unless state law "clearly bars" them. *Moore v. Sims*, 442 U.S. 415, 426 (1982); *see also Pennzoil*, 481 U.S. at 15 ("a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary."); *Communications Telesystems Int'l v. California Pub. Util.*, 196 F.3d 1011, 1020 (9th Cir. 1999) ("*Younger* requires only the absence of 'procedural bars' to raising a federal claim in the state proceedings."). In short, the third element of *Younger* is met where a plaintiff has "the opportunity to raise *and have timely decided* by a competent state tribunal the federal issues involved." *Gibson v. Berryhill*, 411 U.S. 564, 577 (1973) (emphasis added).

In unique circumstances, operation of state procedural deadlines may act as a procedural bar when application of those deadlines would result in the plaintiff suffering some injury prior to being able to raise his or her constitutional challenges. *See Meredith v. Oregon*, 321 F.3d 807, 818-20 (9th Cir. 2003); *see also Adibi v. Cal. State Bd. of Pharmacy*, 393 F. Supp. 2d 999, 1009-10 (N.D. Cal. 2005) ("For *Younger* abstention, the adequacy of the opportunity to litigate the federal claim in a state proceeding requires that such opportunity be timely – *i.e.,* prior to the administrative deprivation."). For instance, in *Adibi*, the California State Board of Pharmacy initiated proceedings to suspend the plaintiffs' pharmacy license and export permit based on alleged improper exportation of pharmaceuticals. 393 F. Supp. 2d at 1002-03. Shortly after administrative proceedings commenced, the plaintiffs filed suit in the Federal District Court for the Northern District of California, contending that the Board of Pharmacy's action violated the Commerce Clause. *Id.* Significantly, while the plaintiffs could seek review of any adverse

**ORDER - 10**

decision of the Board of Pharmacy through the state court system, the Board of Pharmacy could enter an order immediately suspending or revoking the license and permit before judicial review. *Id.* at 1009. The court reasoned that *Younger* abstention was inappropriate because the plaintiffs could not raise their constitutional challenges before suffering an administrative injury. *Id.* That is, the plaintiffs had the opportunity to raise their constitutional challenges in a presumably adequate forum – the state court system – but could not timely do so because of the state procedural rule that allowed the Board of Pharmacy to enter an order immediately suspending or revoking their license and permit before judicial review. *Id.* at 1009-10.

Likewise, in *Meredith*, the Ninth Circuit held that a plaintiff did not have an adequate opportunity to raise his constitutional challenges because state procedural deadlines prevented him from litigating those claims prior to an administrative deprivation. 321 F.3d at 818. There, the Oregon Department of Transportation ("ODOT") initiated administrative proceedings against plaintiff to remove an unpermitted outdoor advertising sign on his property. *Id.* at 810. Following an administrative hearing, ODOT entered a final order directing the plaintiff to remove the sign immediately or pay for the state to remove the sign thirty days after the order issued. *Id.* at 819. Under Oregon law, the plaintiff could petition for judicial review and request the agency to stay the order being reviewed. *Id.* However, the agency had thirty days to respond to the stay request. *Id.* Thus, under the facts of the case, the Ninth Circuit reasoned that the thirty-day response period acted as a procedural bar to the plaintiff's opportunity to timely raise constitutional challenges because the order directing him to remove the sign (or pay the state to remove it for him) would become final before he would receive a response from ODOT regarding his stay request. *Id.* In other words, the operation of Oregon's procedural deadlines as applied to the facts of the case resulted in the plaintiff losing his opportunity to raise

**ORDER - 11**

constitutional challenges to the administrative action before being injured. Accordingly, the court held that "due to the unique posture of this case" the plaintiff did not have an adequate opportunity to raise his constitutional claims and abstention was inappropriate. *Id.* at 20.

The Court finds *Meredith* and *Adibi* persuasive to the extent that they hold that state procedural deadlines may act as a bar to a plaintiff's ability to *timely* raise a constitutional challenge before suffering an administrative deprivation.[7] Here, the Idaho Bar Commission Rules impose little in the way of deadlines for the Board to reach determinations on applications. The only concrete deadline the Court can discern is the requirement that the Board issue a written decision within fourteen days of receiving the transcript of a show cause hearing. *See* I.B.C.R. 216(g). Otherwise, there is significant discretion afforded as to when the CF Committee may schedule a Rule 208 examination, when the CF Committee may issue a recommendation to the Board following the examination, when the Board must vote on that recommendation, when the Board must issue a written decision to the applicant, and when the Board may schedule a show cause hearing. *See* I.B.C.R. 208(c), 209(c)(5), 215(a), 215(f)(1).

In contrast, the Rules set a strict deadline of thirty-seven months for the transferability of a passing MBE score. I.B.C.R. 217(d). Thus, absent some intervention by the Idaho Supreme

---

[7] Defendants rely on *Lawrence v. Carlin*, 541 F. Supp. 2d 189 (D.D.C. 2008), but the Court finds that case distinguishable. Although the facts in *Lawrence* bear a strong resemblance to this matter, the available procedural mechanisms for state-court review contain critical differences. There, the relevant admission rules allowed the applicant to seek an interlocutory review from the District of Columbia Court of Appeals on a showing of "extraordinary circumstances." *Id.* at 192. The district court reasoned that the applicant could have raised his due process concerns regarding the delay in his application through a petition under that rule. *Id.* at 194 n.5. Here, there is no such rule, and Plaintiff must wait until he receives a written decision from the Board after a show cause hearing before his ability to petition the Idaho Supreme Court for review is triggered.

**ORDER - 12**

Court allowing an extension of Plaintiff's MBE score,[8] the structure of the Rules allows for an applicant to suffer an administrative deprivation – the loss of a transferable MBE score – before timely constitutional review can be had before the Idaho Supreme Court. *See Adibi*, 393 F. Supp. 2d at 1009-10 (reasoning that, had the state agency stipulated to a stay of its order pending judicial review, the court may have concluded that the plaintiff had an adequate opportunity to litigate his constitutional claims). In other words, the combination of discretionary deadlines for the Board and CF Committee in reviewing an application, coupled with the thirty-seven-month deadline for MBE score transferability, acts as a procedural bar under the narrow facts presented by this case. Accordingly, the Court concludes that the state proceedings have not afforded Plaintiff the opportunity to timely raise his constitutional challenges and this element of *Younger* is not met.

To be clear, this conclusion should not be construed as an expression that any delay in Plaintiff's application has been undertaken in bad faith, or that the rules that allowed such a delay are invalid. Those are "doubtful and difficult questions of law [and] disputed questions of fact" that need not be resolved for purposes of the PI Motion. *Perlot*, 2022 WL 2355532, at *6. Simply put, based on the record available to the Court at this stage in the proceedings, the facts demonstrate that Plaintiff will not be able to litigate his due process challenges in front of the Idaho Supreme Court before his passing MBE score expires in February. As such, he has not had the timely opportunity to litigate his constitutional claims.

---

[8] Plaintiff has received an extension of this deadline from the Idaho Supreme Court allowing his MBE score to remain transferable until February 2023. While there is no guarantee that the Idaho Supreme Court may grant a second, similar extension, the Parties indicated at the December 20, 2022, motion hearing that they were amenable to requesting another extension before the Supreme Court. This Court strongly encourages the Parties to pursue this option.

**ORDER - 13**

    4. *Plaintiff's request relief would enjoin the ongoing state proceedings.*

Plaintiff argues that any relief ordered by this Court would not have the practical effect of enjoining state proceedings because he is asking to expedite the proceedings, not terminate or truncate them. Reply in Supp. of PI Mot. at 6-8 (Dkt. 42). This argument is without merit.

Plaintiff is quite literally requesting *injunctive relief* from this Court to accelerate state proceedings. This is precisely the type of federal court intervention contemplated by *Younger*. *See Arevalo v. Hennessy*, 882 F.3d 763, 765-766 (9th Cir. 2018) ("*Younger* cautions against federal *interference* with ongoing state criminal, civil, and administrative proceedings.") (emphasis added). It is immaterial that Plaintiff asks this Court to order the Defendants to expedite the proceedings as opposed to halt them. Injunctions can be either prohibitory (an order to not take an action) or mandatory (an order to take some specified action). *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878-79 (9th Cir. 2009). Consequently, the Court concludes that this element of *Younger* is met because the Plaintiff is requesting the Court to enjoin the state proceedings.

    5. *The Court will not abstain nor will it address exceptions to Younger*

As the Court has concluded that only three of four elements in the *Younger* test articulated above have been met, *Younger* abstention is inappropriate in this matter. Further, since abstention is inappropriate, the Court need not address Plaintiff's arguments that the bad faith or harassment exception to *Younger* abstention apply.

B. <u>Plaintiff's PI Motion is Denied</u>

A preliminary injunction should only issue if a plaintiff establishes: (i) a likelihood of success on the merits, (ii) a likelihood of irreparable harm in the absence of injunctive relief, (iii) "the balance of equities tips in [his] favor," and (iv) that the injunction would be in the public

interest.  *Recycle for Change v. City of Oakland*, 856 F.3d 666, 669 (9th Cir. 2017).  These elements are viewed on a "sliding scale," so a forceful showing on one element can compensate for a weaker showing on another.  *Id.*

Again, preliminary injunctions can be either prohibitory or mandatory.  *Marlyn Nutraceuticals, Inc.*, 571 F.3d at 878-79.  A prohibitory injunction preserves the status quo by preventing a party from taking some action before a determination on the merits of the action.  *Id.*  A mandatory injunction, in contrast, requires a party to take some action prior to a determination of the case on its merits.  *Id.*  Because mandatory injunctions "go[] well beyond simply maintaining the status quo," they are "particularly disfavored" and subject to a heightened burden of proof.  *Diamond House of SE Idaho v. City of Ammon*, 381 F. Supp. 3d 1262, 1270 (D. Idaho 2019).  Generally, mandatory injunctions should not be granted "unless extreme or very serious damage will result" and should not issue in doubtful cases "or where the injury complained of is capable of compensation in damages."  *Id.*

    1. *Only one of Plaintiff's claimed injuries is irreparable*

Plaintiff asserts that he will suffer two irreparable injuries: (i) each day that passes without a decision on his bar application he is prevented from practicing his livelihood and (ii) he will lose his transferable MBE score unless he receives a decision on his application before the February bar exam.  Mem. in Supp. of PI Mot. at 16-17 (Dkt. 3-1).  Defendants argue that Plaintiff's claimed injuries are too speculative.  Resp. to PI Mot. at 17-18 (Dkt. 41).

Plaintiff's first asserted injury is not irreparable.  Plaintiff relies on *Gershenfeld v. Justices of the Supreme Court of Pennsylvania*, 641 F. Supp. 1419 (E.D. Penn. 1986) to support his contention that each day that passes without a decision on his application he suffers an inability to practice as an attorney.  Mem. in Supp. of PI Mot. at 16-17 (Dkt. 3-1).  That case is

**ORDER - 15**

readily distinguishable from the current matter. *Gershenfeld* concerned the emergency suspension of a practicing attorney's license. 641 F. Supp. at 1420. In analyzing the private interest affected by a claimed due process violation, the court reasoned that each day that passed without a decision on Gershenfeld's disciplinary matter resulted in a "severe and irreparable effect" based on his loss of income and loss of clients he collected over the span of his career. *Id.* at 1427 (citing *Barry v. Barchi*, 443 U.S. 55, 73-74 (1979)). Furthermore, the court was not analyzing whether Gershenfeld suffered an irreparable injury for purposes of a preliminary injunction. *See generally id.* (denying the defendants' motion to stay). Rather, the court was considering a motion to stay, which does not require consideration of irreparable injury at all, let alone set out a standard for evaluating whether a plaintiff has carried their burden to establish such an injury. *See Ever Win Int'l Corp. v. Radioshack Corp.*, 902 F. Supp. 2d 503, 505 (D. Del. 2012) (noting that courts in the Third Circuit "typically considered three factors when deciding a motion to stay: (1) whether granting the stay will simplify the issues for trial; (2) the status of the litigation, particularly whether discovery is complete and a trial date has been set; and (3) whether a stay would cause the non-movant to suffer undue prejudice from any delay, or allow the movant to gain a clear tactical advantage").

Moreover, even if the Court was applying the preliminary injunction standard, Plaintiff is not similarly situated to the plaintiff in *Gershenfeld*. Plaintiff is not a licensed attorney, and his ability to practice is contingent on (i) passing character and fitness review by the Defendants, or (ii) successfully appealing Defendant's adverse decision to the Idaho Supreme Court. Further, if Plaintiff's application is granted, he still must sit for and pass the Idaho Bar Exam. All of this is to say, each day that passes without a decision on Plaintiff's bar application (while causing him

**ORDER - 16**

considerable and understandable consternation) is not necessarily causing Plaintiff to lose income or clients in the same concrete fashion as the attorney in *Gershenfeld*.

Additionally, assuming for arguments' sake that Defendants' have wrongfully deprived Plaintiff of his livelihood, that loss is compensable in damages. *See Int'l Ass'n of Machinists & Aerospace Workers v. Alaska Airlines, Inc.*, No. C85-2140M, 1986 WL 15573, at *6 (W.D. Wash. Aug. 25, 1986) ("Without question, lost wages and lost possessions are compensable with money. Lost seniority is as easily compensable by reinstatement with seniority. And this Court finds that any purported trauma, if it exists at all, also is compensable with money damages.").

The loss of Plaintiff's passing MBE score, however, is more likely than not irreparable. While Plaintiff may have passed the MBE before, him passing it again is no foregone conclusion. While Plaintiff has proven his aptitude for the MBE once before, he is at a different place in his life now. He is years removed from law school and, after protracted litigation against two state bars as a result of denied applications, perhaps without the same vigor for taking the MBE again. It is no guarantee that he passes the second time around. Nor is the harm from having to take the MBE again readily quantifiable in monetary terms. Indeed, the many hours of studying, the taking of practice tests, the stress of taking the MBE exam, and the agonizing wait before hearing the results cannot be neatly reduced to a dollar figure. As such, Plaintiff has demonstrated a likelihood of irreparable harm.

2. *Granting Plaintiff's requested injunction would not remedy his injury*

Critically, however, Plaintiff is not entitled to injunctive relief because the relief he requests would not prevent the irreparable injury he asserts. A core part of granting a preliminary injunction is that the Plaintiff must demonstrate not only a likelihood of irreparable harm, but a likelihood that such harm will occur in the absence of the injunctive relief requested.

**ORDER - 17**

*Recycle for Change*, 856 F.3d at 669 (plaintiffs must demonstrate "a likelihood of irreparable harm *in the absence of injunctive relief*") (emphasis added).

Although the loss of Plaintiff's MBE score may be irreparable, the injunction he seeks would not prevent that injury. Plaintiff has requested this Court to (i) order Defendants to "issue a timely decision (any decision) on his ability to sit for the" February bar exam and (ii) "if the decision is adverse, to hold a timely show cause hearing presided over by a neutral decisionmaker." PI Mot. at 2 (Dkt. 3). However, Plaintiff's ability to seek review by the Idaho Supreme Court is not triggered until the Board issues a decision fourteen days after receiving the transcript of the show cause hearing. I.B.C.R. 216(a). And, at the December 20, 2022 motion hearing, Plaintiff acknowledged that review by the Idaho Supreme Court would very likely extend past February 2023, resulting in the expiration of his passing MBE score irrespective of any Court-ordered relief.[9] In short, even if this Court were to order Defendants to hold a show cause hearing and issue a final, appealable decision tomorrow, Plaintiff's MBE score would likely still expire while he litigated his matter before the Idaho Supreme Court. Consequently, Plaintiff's PI Motion is denied because the injunctive relief he requests would not prevent the irreparable harm.

> 3. *The Court need not address the other elements of a preliminary injunction*

Because the Court finds that Plaintiff has failed to establish the second element required for issuing a preliminary injunction, it need not engage in an analysis of Plaintiff's likelihood of success on the merits, the balance of the equities, or the public interest in an injunction.

---

[9] For instance, during his first bar application process, Plaintiff filed his petition for review before the Idaho Supreme Court on January 1, 2021. Following litigation before the Supreme Court, he did not receive a final decision denying his bar application until February 4, 2022. Pirtle Dec., Ex. C ¶ 19 (Dkt. 41-1).

**ORDER - 18**

C. Plaintiff's Motion in Limine is moot

Prior to the December 20, 2022, motion hearing, Plaintiff filed a Motion in Limine seeking to prohibit the presentation of oral testimony at the hearing and have the court declare certain facts conclusively established for purposes of the preliminary injunction.  Mot. in Limine (Dkt. 44).  As the Court stated on the record at the motion hearing, the Court did not hear or consider oral testimony from Defendants other than testimony to which Plaintiff assented.  Further, the Court's decision on the PI Motion does not rely on any of the facts that Plaintiff wished to have declared conclusively established.[10]

### III.   ORDER

ACCORDINGLY, IT IS HEREBY ORDERED that:

1. Plaintiff's Motion for Preliminary Injunction (Dkt. 3) is DENIED
2. Plaintiff's Motion in Limine (Dkt. 44) is DENIED as moot

DATED: December 23, 2022

Raymond E. Patricco
Chief U.S. Magistrate Judge

---

[10] To be sure, Plaintiff requested that the Court declare as established as fact that "in the absence of Court-ordered injunctive relief Plaintiff will suffer *immediate* and *irreparable harm* for which Plaintiff has not adequate remedy at law."  Mot. in Limine at 5.  However, this is not a fact, but a legal conclusion.

**ORDER - 19**