# UNITED STATES DISTRICT COURT

## DISTRICT OF IDAHO

| | |
|---|---|
| BROOKS M. WITZKE,<br><br>    Plaintiff,<br><br>vs.<br><br>IDAHO STATE BAR,<br><br>ROBERT A. BERRY, individually and in his official capacity as a DEPUTY ATTORNEY GENERAL FOR THE STATE OF IDAHO,<br><br>LAWRENCE G. WASDEN, individually and in his official capacity as the ATTORNEY GENERAL FOR THE STATE OF IDAHO,<br><br>KRISTIN L. BJORKMAN, individually and in her official capacity as the PRESIDENT OF THE IDAHO STATE BAR BOARD OF COMMISSIONERS,<br><br>JOSEPH N. PIRTLE, individually and in his official capacity as the IDAHO STATE BAR COUNSEL,<br><br>MITCHELL W. BROWN, individually and in his official capacity as the DISTRICT COURT JUDGE FOR THE COUNTIES OF CARIBOU, BEAR LAKE, FRANKLIN, and BANNOCK, COUNTIES WITH THE SIXTH JUDICIAL DISTRICT OF THE STATE OF IDAHO,<br><br>THE COUNTY OF CARIBOU, IDAHO,<br><br>THE COUNTY OF FRANKLIN, IDAHO,<br><br>THE COUNTY OF BEAR LAKE, IDAHO,<br><br>    Defendants. | Case No. 1:22-cv-00478-REP<br><br>**MEMORANDUM DECISION AND ORDER ON STATE DEFENDANTS' MOTION TO DISMISS**<br><br>**(Dkt. 81)** |

**ORDER ON STATE DEFENDANTS' MOTION TO DISMISS – 1**

Before the Court is the State[1] Defendants' Motion to Dismiss (Dkt. 83).  All parties have consented to the exercise of jurisdiction by a United States Magistrate Judge. (Dkt. 32).

## BACKGROUND

Plaintiff filed a Verified Complaint and Motion for Preliminary Injunction on November 19, 2022 (Dkts. 1, 3).  The Complaint raises five counts against the Idaho State Bar (the "ISB"), several ISB officials, attorneys who have represented the ISB and related officials in prior proceedings, a state-court Judge, and several counties.  Plaintiff has broken his Complaint into two "parts" each of which is summarized separately. However, before discussing Plaintiff's specific allegations, a brief overview of the administrative steps involved in the Idaho Bar application process is helpful.

### A.  **The Bar Application Process**

The ISB administers the bar exam twice each year, first in February and again in July. *See* Idaho Bar Commission Rule 203(b) [hereinafter "I.B.C.R."].  Upon receiving an application, the ISB Board of Commissioners ("the Board") assesses the applicant's eligibility to practice law, including, as is pertinent here, investigating whether an applicant possesses the requisite character and fitness to practice law.  I.B.C.R. 208(a).  If an application raises character and fitness concerns, the Board may refer that application to an ISB subcommittee, the Character and Fitness Committee ("CF Committee"), which conducts an investigation into the applicant and makes recommendations to the Board about the application.  I.B.C.R. 208(b).

After their application is referred to the CF Committee, the applicant may be required to appear before the CF Committee to answer questions concerning their character and fitness, in a

---

[1] Collectively the Idaho State Bar Board of Commissioners, Robert A. Berry, Lawrence G. Wasden, Kristin L. Bjorkman, Joseph N. Pirtle, and Judge Mitchell W. Brown.

**ORDER ON STATE DEFENDANTS' MOTION TO DISMISS – 2**

process known as a "Rule 208 examination." I.B.C.R. 208(c); I.B.C.R. 209(c). Using character and fitness standards supplied by the I.B.C.R., the CF Committee may, through a majority vote of a quorum of members, "approve or recommend denial or conditional admission of an [a]pplicant." I.B.C.R. 209(e)-(f). If the CF Committee recommends denial, the application goes back before the Board.

Following a recommendation from the CF Committee, the Board may (i) approve the application, (ii) deny or modify the application, (iii) issue a recommendation of conditional admission, or (iv) request additional investigation. I.B.C.R. 215(a). If the Board chooses to deny the application, an applicant has twenty-one days to after receiving notice of the adverse decision to request a "show-cause" hearing. I.B.C.R. 215(d). The Board may schedule a show-cause hearing "at a time convenient to the Applicant and the Board" and must provide an applicant at least fourteen days' notice of the hearing date. I.B.C.R. 215(f)(1). Show cause hearings are conducted "in an informal manner reasonably calculated to protect the rights of the Applicant and the Board" and conducted by Board-appointed hearing officers. I.B.C.R. 215(f)(2)-(4). After a show cause hearing, the Board has fourteen days from receipt of the hearing transcript to enter a decision on an application. I.B.C.R. 215(g).

If an application is denied following a show cause hearing, the applicant may take one last procedural step and petition the Idaho Supreme Court to review the Board's decision within twenty-one days. I.B.C.R. 216(a), (d). The Idaho Supreme Court reviews the Board's decision under an arbitrary and capricious standard of review, either with or without a hearing. I.B.C.R. 216(b), (g).

**ORDER ON STATE DEFENDANTS' MOTION TO DISMISS – 3**

Needless to say, navigating this process – which involves multiple rounds of independent review by a number judicial and quasi-judicial authorities – can be lengthy.  For reference, Plaintiff's first bar application process took around two years from start to finish.

**B.  <u>Part One: Plaintiff's Second Bar Application</u>**

Shortly after the denial of his first bar application, Plaintiff filed a second bar application in April of 2022, this time to sit for the July 2022 Idaho Bar Exam.  *Id.* ¶ 22.  Before submitting his second application, Plaintiff filed a lawsuit ("*Witzke I*") in this Court against the ISB and several ISB officials.  *See Witzke v. Idaho State Bar*, 1:22-cv-00090-REP.[2]  Plaintiff requested a declaration that several bar admission rules were illegal and an injunction preventing their enforcement against him during his second application process.  *Id.*  As *Witzke I* was pending, the ISB referred Plaintiff's second application for character and fitness review and notified Plaintiff that, because of the time needed for the review, his application had been deferred to the February 2023 Bar Exam.  V. Compl. ¶ 26 (Dkt. 1).  Shortly thereafter, Plaintiff filed another lawsuit ("*Witzke II*") against the ISB and several ISB officials.  *Witzke v. Idaho State Bar, et al.*, 4:22-cv-00253-REP, wherein he sought an injunction forcing the ISB to issue a decision on his second bar application before the July 2022 Bar Exam.  *Id.* ¶ 30.  Plaintiff alleged that he would suffer irreparable injury because his passing Multistate Bar Exam ("MBE") score from another

---

[2] Both parties request the Court to take judicial notice of *Witzke I* and another case filed by Plaintiff, *Witzke v. Idaho State Bar, et al.*, 4:22-cv-00253-REP ("*Witzke II*").  This Court may do so.  *See WildEarth Guardians v. U.S. Forest Serv.*, No. 1:19-cv-00203-CWD, 2020 WL 7647630, at *6 (D. Idaho Dec. 23, 2020) (quoting *Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 866 n.1 (9th Cir. 2004) ("[T]he Court may judicially notice the existence of another court's decision—which includes the stated reasoning of the authoring court as well as the date of the decision—and other filings made in the case, but not the facts recited in that decision or other filings.").

**ORDER ON STATE DEFENDANTS' MOTION TO DISMISS – 4**

jurisdiction would expire before the February 2023 Idaho Bar Exam.[3]  Plaintiff voluntarily

dismissed *Witzke II* after the parties reached an agreement that allowed an extension of Plaintiff's

passing MBE score until February 2023.  *Id.* ¶¶ 32-33.

Following the dismissal of *Witzke II*, the ISB held a Rule 208 examination on Plaintiff's

second bar application on August 22, 2022.  *Id.* ¶ 34.  After the Rule 208 examination, the

Committee waited until October 13, 2022, to recommend denial of his application.  *Id.* ¶ 34, 40.

Minutes from the October 13, 2022, CF Committee meeting showed that the decision to

recommend denial was based, in part, on the Committee's concerns with Plaintiff's litigation

conduct in *Witzke I*.  *Id.* ¶ 42.  Following the CF Committee's recommendation, Plaintiff

understood that the Board would not hold a vote on adopting that recommendation until late

December of 2022.  *Id.* ¶ 47.  Concerned that his application would not be processed before the

February 2023 Bar Exam, Plaintiff tried to persuade the Board to hold an earlier vote.  *Id.* ¶¶ 47-

51.  After threatening another lawsuit, Plaintiff alleges that the Board assured him that it would

vote on his application at a November 9, 2022 hearing.  *Id.* ¶ 52.  Yet, on November 8, 2022,

Defendant Pirtle emailed Plaintiff to inform him that the Board would not vote on his application

at that time because the CF Committee's written findings of fact and conclusions of law were not

complete.  *Id.* ¶¶ 54-55.

Plaintiff then initiated this lawsuit on November 19, 2022.  V. Compl. (Dkt. 1).

Plaintiff's Verified Complaint was accompanied by an Emergency Motion for Preliminary

Injunction.  PI Mot. (Dkt. 3).   Like *Witzke II*, Plaintiff requested this court to issue an injunction

---

[3] The Idaho Bar Commission Rules allow passing MBE scores from other jurisdictions to be
transferred to Idaho within 37 months.  I.B.C.R. 217(d).

**ORDER ON STATE DEFENDANTS' MOTION TO DISMISS – 5**

requiring the Board to issue a decision on his application and schedule a show-cause hearing before the February 2023 Bar Exam. *Id.*

The Court heard argument on Plaintiff's Emergency Motion for Preliminary Injunction on December 20, 2022 and denied the Motion on December 23, 2022. MDO (Dkt. 50). In the course of resolving that Motion, the State Defendants informed the Court that the Board had met on December 9, 2022 and voted to deny Plaintiff's second application. Def.'s Resp. to Pln.'s PI Mot., Pirtle Dec. ¶ 20 (Dkt. 41-1). Then, in late January of 2023, Plaintiff informed the Court that a show cause hearing had been scheduled for his application on March 8, 2023. Pln.'s Mem. in Supp. of Mot. to Stay ¶ 2 (Dkt. 83-1). Yet, Plaintiff never received a show cause hearing because he withdrew his second application on March 7, 2023. *See* Pln.'s Suppl. Brief at 1 (Dkt. 112). Finally, on April 12, 2023, Plaintiff filed a third bar application. *Id.*

Counts I and II of Plaintiff's Verified Complaint raise claims related to his second application process. First, in Count I Plaintiff seeks injunctive relief to have the Board issue a decision and hold a show cause hearing on his second bar application. V. Compl. at 35 (Dkt. 1). In Count II, Plaintiff seeks a declaration that I.B.C.R. 215(a) and 215(f)(1) (the "Challenged Rules" or "Rules") violate the due process clause of the Fourteenth Amendment and an injunction (i) preventing the enforcement of those rules in a way that imposes needless delay and (ii) requiring the State Defendants to revise those rules to add specific deadlines. *Id.* at 44. Additionally, Plaintiff argues that these challenges apply with equal force to his third bar application. Pln.'s Suppl. Brief at 4 (Dkt. 112).

**ORDER ON STATE DEFENDANTS' MOTION TO DISMISS – 6**

C. **Part Two: Plaintiff's allegations of retaliation**

In addition to his claims regarding his second (now third) bar application, Plaintiff alleges that the State Defendants also conspired to retaliate against him for litigating *Witzke I*, resulting in Plaintiff being fired from his job in November of 2022.

Defendant Brown, a district judge for Idaho's Sixth Judicial District,[4] hired Plaintiff as a law clerk beginning in February of 2022.  V. Compl. ¶ 81.  Plaintiff held that position until mid-November of 2022, just before he filed this lawsuit.  He alleges that on the morning of November 14, 2022, he overheard Defendant Brown on the phone with an unknown individual discussing his frustration with Plaintiff's litigation in *Witzke I* and indicating that he was looking for a reason to fire Plaintiff.  *Id.* ¶ 84.  That same day, Defendant Brown called Plaintiff into a courtroom in the Caribou County Courthouse to inform him that he was being placed on paid administrative leave until the end of his term in January 2023.[5]  *Id.* ¶¶ 86-88.  Defendant Brown informed Plaintiff that Defendants Pirtle and Bjorkman had filed a judicial ethics complaint against him.  *Id.* ¶ 89.  That complaint alleged that Plaintiff had (i) threatened the Board with physical harm in an email, (ii) used the "prestige of the judicial office to gain an unfair advantage" in *Witzke I*, and (iii) been escorted by police out of a November 9, 2022, Board meeting after making threats.  *Id.*  Defendant Brown also stated that he had been in contact with Defendants Berry and Wasden, who told him of Plaintiff being forcibly removed from the November 9, 2022, Board meeting.  *Id.* ¶ 99.  Plaintiff alleges that these charges are fabricated,

---

[4] The Sixth Judicial District encompasses the counties of Bannock, Bear Lake, Caribou, Franklin, Oneida, and Power. *Idaho's District Courts*, STATE OF IDAHO JUDICIAL BRANCH, https://isc.idaho.gov/district-courts (last visited April 13, 2023).

[5] Although Plaintiff's Verified Complaint alleges that he was "fired," exhibits attached to the Complaint that this Court may rely on confirm that Plaintiff was placed on paid administrative leave until the end of his term. V. Compl., Ex. 14 (Dkt. 1-12).

**ORDER ON STATE DEFENDANTS' MOTION TO DISMISS – 7**

that he did not send threatening emails, and that he has an alibi for the night of November 9, 2022, when he was purportedly escorted out of a Board meeting. *Id.* ¶¶ 90-97.

Instead, Plaintiff asserts that the judicial ethics complaint against him amounts to nothing more than pretext for the Defendant Brown's real reason for placing him on leave – his discriminatory animus against Plaintiff for litigating *Witzke I*. *Id.* ¶ 98.  He alleges that Defendant Brown told him as much in the presence of two witnesses the day he placed Plaintiff on administrative leave. *Id.* ¶¶ 99-100.  In short, Plaintiff alleges that the State Defendants conspired to have Plaintiff removed from his job in retaliation for *Witzke I*. *Id.* ¶ 104.

Counts III through V of Plaintiff's Verified Complaint concern this alleged retaliation, raising: (i) a claim for retaliation under the Americans with Disabilities Act ("ADA") and Rehabilitation Act ("RA"), (ii) a claim under 42 U.S.C. § 1983 for retaliatory termination in violation of the First Amendment, and (iii) a § 1983 conspiracy claim relating to his termination. *Id.* ¶¶141-87.  The State Defendants filed their Motion to Dismiss on January 26, 2023, asserting both jurisdictional bases for dismissal under Federal Rule of Civil Procedure 12(b)(1) and merits-based reasons for dismissal under Rule 12(b)(6).  The Court heard argument on the Motion to Dismiss on April 20, 2023.  Further, the Court requested supplemental briefing from the parties following the hearing.  Now, being fully advised, the Court renders the following Memorandum Decision and Order.

## LEGAL STANDARD

### A.  Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a complaint to be dismissed if the court lacks subject matter jurisdiction over the claims. Fed. R. Civ. P. 12(b)(1).  A Rule 12(b)(1) motion may challenge jurisdiction facially, by asserting that the pleadings are insufficient to

establish subject matter jurisdiction, or factually, by introducing extrinsic evidence that calls

jurisdiction into question. *Shoshone-Bannock Tribes of Fort Hall Reservation v. United States*,

575 F. Supp. 3d 1245, 1252 (D. Idaho 2021). The State Defendants raise a facial attack to the

Court's subject matter jurisdiction. When considering a facial attack on jurisdiction, courts

presume the allegations in the complaint are true and construe them in the light most favorable to

the plaintiff. *Id.* When subject matter jurisdiction is challenged under Rule 12(b)(1), the

plaintiff bears the burden of persuasion. *Id.*

### B.  Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss claims for failing to

state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Dismissal can be

predicated on either (a) "a lack of cognizable legal theory" or (b) "the absence of sufficient facts

alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d

1116, 1122 (9th Cir. 2008). While detailed factual allegations are not required, a complaint must

assert "more than labels and conclusions, and a formulaic recitation of the elements of a cause of

action will not do." *Shoshone-Bannock Tribes*, 575 F. Supp. 3d at 1253 (quoting *Bell Atl. Corp.

v. Twombly*, 550 U.S. 554 (2007)). Under Rule 12(b)(6), the court must accept as true all well-

pleaded factual allegations in the complaint. *Id.* Conclusory allegations, unwarranted

deductions of fact, and unreasonable inferences need not be accepted as true. *Id.* (citing *Sprewell

v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)). The Court may also consider

"documents attached to the complaint, documents relied upon but not attached to the complaint

when authenticity is not contested, and matters of which the court takes judicial notice." *Nissou-

Rabban v. Capital One Bank (USA), N.A.*, 285 F. Supp. 3d 1136, 1146 (S.D. Cal. 2018) (citing

*Lee v. City of L.A.*, 250 F.3d 668, 688-89 (9th Cir. 2001)).

## DISCUSSION

The State Defendants seek dismissal of each of Plaintiff's five counts.  As an initial matter, they argue that Count I – his request for an injunction forcing the ISB to issue a decision on his second application and hold a timely show cause hearing – is moot because (i) the Court denied Plaintiff's Emergency Preliminary Injunction Motion (Dkt. 3) and (ii) Plaintiff's second bar application process has concluded.  State Defs.' Mem. in Supp. of MTD at 4 (Dkt. 81-1).  Plaintiff concedes that this Count is moot and should be dismissed.  Pln.'s Mem. in Resp. to Def.'s Mot. to Dismiss at 2 (Dkt. 101).  The Court agrees and grants the State Defendants' Motion to Dismiss as to Count I.  The Court addresses the remaining counts as follows.

### A.  **Plaintiff's challenges to the Idaho Bar Commission Rules are dismissed.**

Plaintiff's Complaint lacks clarity as to the type of constitutional challenges he raises.  At various times he asserts that the Challenged Rules are "facially invalid," but also alleges specific harm that he has suffered through application of those Rules.  *See, e.g.*, V. Compl. ¶¶ 133-34.  Plaintiff's briefing further confounds the issues, introducing concepts of procedural due process, substantive due process, and the void-for-vagueness doctrine.  Pln.'s Resp. to State Defs.' MTD at 4-10 (Dkt. 101).  When asked at the April 20, 2023, motion hearing what types of claims he brought, Plaintiff indicated that he was bringing all of the above.  That is, Plaintiff asserts that he is bringing both procedural and substantive due process challenges to the Rules both facially and as applied.  Although it is not entirely clear that all of these claims were adequately pled, the Court will address each out of an abundance of caution.

#### 1.  Plaintiff's facial challenges fail as a matter of law.

Plaintiff makes three arguments as to why the Challenged Rules are facially invalid: (i) they are unconstitutionally vague, (ii) they offend substantive due process because they interfere

**ORDER ON STATE DEFENDANTS' MOTION TO DISMISS – 10**

with the fundamental right to pursue a chosen profession, and (iii) they offend procedural due process because they allow the Board great discretion as to when to issue a decision or schedule a show-cause hearing.  Pln.'s Resp. to State Defs.' MTD at 8-10 (Dkt. 101).

### i. The void-for-vagueness doctrine is inapplicable.

Plaintiff's contention that the Challenged Rules are unconstitutionally vague is not persuasive because the void-for-vagueness doctrine does not apply procedural rules.  The void-for-vagueness doctrine only applies to statutes which proscribe conduct and are punishable with civil or criminal penalties.[6]  *See Sessions v. Dimaya*, 138 S. Ct. 1204, 1212 (2018) (internal quotation marks omitted).  Due process requires that a statute prohibiting conduct be sufficiently clear to give "ordinary people" fair notice "of the conduct a statute proscribes."  *Id.*  The void-for-vagueness doctrine "is a corollary of the separation of powers" because it requires the legislative branch, as opposed to the executive or judicial branch, to "define what conduct is sanctionable and what is not."  *Id.*

The Challenged Rules do not prohibit any conduct.  Rule 215(a) lists the actions the Board may take after receiving a recommendation from the CF Committee.  Rule 215(f)(1) establishes the procedures for scheduling and appearing at a show cause hearing.  Accordingly, Plaintiff's void-for-vagueness challenge to those Rules is misplaced and the State Defendants' Motion to Dismiss is granted with respect to Plaintiff's void-for-vagueness claim.

### ii. The Challenged Rules are rationally related to a legitimate purpose.

---

[6] Plaintiff cites *Tingley v. Ferguson*, 47 F.4th 1055 (9th Cir. 2022) for the premise that the void-for-vagueness doctrine applies to rules governing professional licensure.  That case does not sweep as broadly as Plaintiff represents, as it concerned a void-for-vagueness challenge to a Washington state "licensing scheme for health care providers, which discipline[d] them for practicing conversion therapy on minors."  *Id.* at 1064.  Thus, *Tingley* involved a challenge to disciplinary rules in a state licensing scheme, unlike Plaintiff's challenge which merely concerns procedural rules.

**ORDER ON STATE DEFENDANTS' MOTION TO DISMISS – 11**

Next, Plaintiff argues that the Challenged Rules facially violate substantive due process because they infringe on his fundamental rights to (i) "be heard at a meaningful time and manner" and (ii) "pursue a chosen occupation in Idaho free from unreasonable interference." Pln.'s Resp. to State Defs.' MTD at 5 (Dkt. 101).

"Substantive due process refers to certain actions that the government may not engage in, no matter how many procedural safeguards it employs." *C.R. v. Eugene Sch. Dist. 4J*, 835 F.3d 1142, 1154 (9th Cir. 2016) (citing *Wedges/Ledges of Cal. v. City of Phoenix*, 24 F.3d 56, 66 (9th Cir. 1994)).  A substantive due process claim follows the familiar tiered Constitutional scrutiny framework.  *See Rasmussen v. Garrett*, 489 F. Supp. 3d 1131, 1161 (D. Or. 2020) (*citing Reno v. Flores*, 507 U.S. 292, 302 (1993)).  If a law infringes on a fundamental liberty or property interest, strict scrutiny applies and the law will be struck down unless it is narrowly tailored to serve a compelling government interest.  *Id.*  In contrast, if the law does not touch on a fundamental liberty or property interest, rational basis review applies, and the law will be upheld if it is rationally related to a legitimate government purpose.  *Kim v. United States*, 121 F.3d 1269, 1273 (9th Cir. 1997).

Plaintiff has not identified any fundamental right violated by the Challenged Rules.  It is well-settled that "[t]here is no fundamental right to practice law or to take the bar examination." *Giannini v. Real*, 911 F.2d 354, 358 (9th Cir. 1990); *see also Lupert v. Cal. State Bar*, 761 F.2d 1325, 1327 n.2 (9th Cir. 1985) (analyzing an equal protection claim and concluding that "[t]here is no basis in law for the argument that the right to pursue one's chosen profession is a fundamental right for purpose of invoking strict scrutiny").  Indeed, "overwhelming legal authority" supports the premise "that review of state procedures for bar admissions and testing is guided by the rational basis standard."  *Giannini*, 911 F.2d at 358 (collecting cases).

**ORDER ON STATE DEFENDANTS' MOTION TO DISMISS – 12**

The cases Plaintiff cites to the contrary are either inapplicable, mischaracterized, or both. He cites *ASSE International, Inc. v. Kerry*, 803 F.3d 1059 (9th Cir. 2015) for the premise that there is a "fundamental right" to receive notice and an opportunity to be heard.  Pln.'s Resp. to State Defs.' MTD at 5 (Dkt. 101).  However, that merely restates the general rule for procedural due process, which is unsurprising because *ASSE* addressed a procedural – not substantive – due process claim.  803 F.3d at 1073-74.  Put simply, while Plaintiff enjoys a fundamental right procedural due process, that claim is evaluated below and cannot be shoe-horned into Plaintiff's substantive due process claim.

Next, he cites *Black Dog Outfitters, Inc. v. State of Idaho Outfitters & Guides Licensing Board*, 790 F. Supp. 2d 1248 (D. Idaho 2011) for the premise that there is a fundamental "right to pursue a chosen occupation in Idaho free from unreasonable interference."  Pln.'s Resp. to State Defs.' MTD at 5 (Dkt. 101).  *Black Dog Outfitters* did not hold that pursuit of a chosen profession is a fundamental right.  There, the district court, in evaluating whether a corporation had the right to pursue a certain line of business, noted that the due process clause of the Fourteenth Amendment protected a "right to hold specific private employment and to follow a chosen profession free from *unreasonable government interference*."  *Black Dog Outfitters*, 790 F. Supp. 2d at 1260 (emphasis added).  The district court did not purport to apply strict scrutiny review and its use of the phrase "unreasonable government interference" implies rational basis review.  *See, e.g.*, *United States v. Juvenile Male*, 670 F.3d 999, 1012 (9th Cir. 2012) (explaining that, if a statute does not abridge a fundamental right, it "need only bear a 'reasonable relation to a legitimate state interest'" to be upheld) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 722 (1997)).

Finally, Plaintiff cites to case law that directly contradicts his own point.  He cites *Williams v. Madison County*, which held that "[a] plaintiff can make out a substantive due process claim if he is unable to pursue an occupation and this inability is caused by government actions that were arbitrary and lacking a rational basis."  No. 4:12-cv-00561-EJL-CWD, 2015 WL 428053, at *4 (D. Idaho Feb. 2, 2015).  Given the above, the Court concludes that rational basis review applies to Plaintiff's substantive due process claim.

Applying that standard, the Challenged Rules bear a rational relationship to a legitimate government purpose.  States have a legitimate interest in regulating their bars, including setting rules for taking the bar exam.  *See Giannini*, 911 F.2d at 358 (explaining that "each state is free to prescribe the qualifications for admission to practice for those lawyers who appear in its courts").  The Rules are rationally related to that purpose because they are merely procedural rules that define how a bar application is processed.  The Rules undoubtedly afford the Board latitude in ruling on pending applications and scheduling hearings after an adverse decision, including setting show cause hearings "at a time convenient to the Applicant and the Board." *See* I.B.C.R. 215(f)(1).  But discretion is not, in-and-of-itself, irrational.  To the contrary, it is reasonable for the Board to have flexibility issuing decisions and scheduling hearings because the Board is composed of volunteers and ostensibly must process hundreds of applications for each of the two bar exams held every year.  Accordingly, the Rules survive rational basis review and do not violate Plaintiff's substantive due process rights.

### iii. The Challenged Rules adequately provide due process in some circumstances.

Finally, Plaintiff's facial challenge to the Rules on procedural due process grounds also fails.  As noted above, Plaintiff's position is that the Challenged Rules allow the Board unfettered discretion to rule (or not rule, as the case may be) on an application, and may then

**ORDER ON STATE DEFENDANTS' MOTION TO DISMISS – 14**

schedule a show cause hearing at their subjective "convenience."  Pln.'s Resp. to Def.'s MTD at 8-10 (Dkt. 101).

To succeed on a facial challenge to a statute, a "challenger must establish that no set of circumstances exists under which the Act would be valid."  *United States v. Salerno*, 481 U.S. 739, 745 (1987).  It is insufficient to show some conceivable set of circumstances under which the act *may* operate unconstitutionally.  *Id.*  So, as concerns Plaintiff's facial challenge to Rules, he must show that there are no set of circumstances under which the Rules provide adequate procedural safeguards.

The Supreme Court has established a three-factor framework for evaluating procedural due process claims, requiring consideration of:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Plaintiff does not specifically address any of the *Mathews* factors.  In any event, his facial challenge fails from the outset because he alleges that at least three other applicants who had their applications referred to the CF Committee around the same time his received "a full adjudication from start to finish" including "a denial, a show cause hearing, and a timely-appealable written decision following the hearing."  V. Compl. ¶ 58 (Dkt. 1).  Consequently, Plaintiff's own allegations foreclose his facial challenge.  Moreover, Plaintiff's arguments focus on what *could* happen, or *has* happened under the Rules, not whether the Rules could ever provide adequate process.  To succeed on his facial challenge, it is not enough to show that the Board may exercise its discretion in a way that deprives an applicant of due process.

**ORDER ON STATE DEFENDANTS' MOTION TO DISMISS – 15**

Consequently, the Court grants the State Defendants' Motion to Dismiss insofar as it relates to Plaintiff's facial procedural due process challenge to the Rules.

2.  <u>Although not moot, *Younger* abstention applies to Plaintiff's as-applied challenges.</u>

At the April 20, 2023, motion hearing, the parties informed the Court that Plaintiff had withdrawn his second bar application and filed a new, third bar application.  Given this changing landscape, the Court requested the parties to file supplemental briefing addressing (i) whether Plaintiff's as-applied challenges were now moot or (ii) whether *Younger* abstention applied to those challenges.  After reviewing the parties' briefing, the Court concludes that Plaintiff's as-applied challenges are not moot because adjudicating how those rules apply to Plaintiff's third bar application still presents a live controversy, but *Younger* abstention applies because Plaintiff's request relief would require this Court to enjoin the proceedings for Plaintiff's third bar application.

*i.  Plaintiff's as applied challenge is not moot.*

"A case becomes moot when 'changes in the circumstances . . . forestall[] any occasion for meaningful relief.'" *Ctr. For Biological Diversity v. Bernhardt*, 509 F. Supp. 3d 1256, 1262 (D. Mont. 2020) (quoting *Gator.com Corp. v. L.L. Bean, Inc.*, 398 F.3d 1125, 1129 (9th Cir. 2005)).  "Mootness can be characterized as 'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'"  *Slockish v. U.S. Fed. Hwy. Admin.*, 682 F. Supp. 2d 1178, 1194 (D. Or. 2010) (quoting *Cook Inlet Treaty Tribes v. Shalala*, 166 F.3d 986, 989 (9th Cir. 1999)).  With respect to a claimant seeking injunctive relief, courts do not ask "whether the precise relief sought at the time the application for an injunction was filed is still available," instead they consider "whether there can be *any* effective relief."  *Id.* (citing *Nw. Envt'l Def. Ctr.*

**ORDER ON STATE DEFENDANTS' MOTION TO DISMISS – 16**

*v. Gordon*, 849 F.2d 1241, 1244-45 (9th Cir. 1988)).  Further, courts have broad discretion to tailor equitable relief.  *Id.*

Plaintiff's as-applied challenge to the Rules is not moot because this Court can still grant effective relief as it relates to Plaintiff's third bar application.  Viewed this way, the capable-of-repetition-but-evading-review doctrine is inapplicable because, while any controversy with Plaintiff's second application is no longer live, his third application remains pending and this Court could grant effective relief as relates to that application.[7]

> *ii. Plaintiff's as applied challenge is subject to Younger abstention.*

Whether it relates to his recently-withdrawn second application or to his currently pending third bar application, Plaintiff requests that this Court exercise a profound amount of control over state bar proceedings.  The Court finds that, under *Younger v. Harris*, 401 U.S. 37 (1971), principles of comity and federalism require it to abstain from adjudicating Plaintiff's as applied challenge.

Generally speaking, *Younger* instructs federal courts to abstain from enjoining pending state judicial proceedings.  *Page v. King*, 932 F.3d 898, 901-02 (9th Cir. 2019).  Abstention is appropriate when:

> (1) there is an ongoing state judicial proceeding; (2) the proceeding implicates important state interests; (3) there is an adequate opportunity in the state proceedings to raise constitutional challenges; and (4) the requested relief seeks to enjoin or has the practical effect of enjoining the ongoing state judicial proceeding.

---

[7] In fairness, the Court recognizes that by concluding that Plaintiff's claim is not moot because of his third application the Court is, for all practical purposes, allowing Plaintiff to amend his complaint.  However, in light of this Court's responsibility to broadly construe pro se filings and a pro se plaintiff's entitlement to notice and an opportunity to amend defects in his or her complaint, the Court will assume for purposes of this Motion that Plaintiff's third bar application stands in place of his second application.  *See Belknap v. Alphabet, Inc.*, 504 F. Supp. 3d 1156, 1159 (D. Or. 2020) (citing *Garity v. APWU Nat'l Labor Org.*, 828 F.3d 848. 854 (9th Cir. 2016)).

**ORDER ON STATE DEFENDANTS' MOTION TO DISMISS – 17**

*Page v. King*, 932 F.3d 898, 901-02 (9th Cir. 2019) (citing *Arevalo v. Hennessy*, 882 F.3d 763, 765 (9th Cir. 2018)).  If these threshold elements are met, a federal court may still decline to abstain if there is "a showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate." *Id.* (internal quotation marks omitted).

Importantly, courts considering whether *Younger* abstention applies may consider not only the allegations in the complaint, but also subsequent developments in the underlying state matter.[8] *Middlesex Cnty. Ethics Comm. v. Garden St. Bar Ass'n*, 457 U.S. 423, 436 (1982) ("There is no reason for federal courts to ignore . . . subsequent development[s]."). Even where state proceedings are initiated *after* a federal complaint is filed, *Younger* principles apply in full force if no "proceedings of substance on the merits have taken place in federal court." *Id.*

Here, *Younger* applies to Plaintiff's as-applied challenge to the rules because (i) proceedings in his third bar application are ongoing; (ii) those proceedings implicate important state interests, *Middlesex*, 457 U.S. at 432-33 (recognizing "the important state obligation to regulate persons who are authorized to practice law"); (iii) Plaintiff has an adequate opportunity to litigate his constitutional claims by seeking review of adverse bar application decisions before the Idaho Supreme Court, *id.* at 436-37 (holding that state supreme court review of bar disciplinary proceedings provides an adequate opportunity to raise constitutional challenges to those proceedings); and (iv) Plaintiff's requested relief would involve this Court enjoining those proceedings. Further, at this early stage in the litigation the Court has not yet weighed in on the merits of Plaintiff's claims, meaning that *Younger* still applies.

---

[8] Plaintiff cannot assert on one hand that his third application stands in the place of his second application with respect to issues of mootness and standing, only to claim on the other hand that this Court cannot consider his third application for purposes of *Younger* abstention. *See* Pln.'s Suppl. Brief at 2 (Dkt. 112).

**ORDER ON STATE DEFENDANTS' MOTION TO DISMISS – 18**

Plaintiff's arguments that *Younger* is inapplicable are unavailing.  First, he asserts that his admissions proceedings are not judicial proceedings subject to *Younger*.  Pln.'s Suppl. Br. at 2 (Dkt. 112).  This Court has already considered and rejected a similar argument in denying Plaintiff's Motion for Preliminary Injunction in this case.  *See Witzke v. Idaho State Bar*, 2022 WL 17903422, at *4 (D. Idaho Dec. 23, 2022) (concluding that "[b]ar admission proceedings are judicial in nature) (citing *D.C. Ct. of App. v. Feldman*, 460 U.S. 462, 478-79 (1983)).  Second, he asserts that the harassment exception to *Younger* should apply because the State Defendants denied his second bar application with a retaliatory motive.  Pln.'s Suppl. Brief at 3-4 (Dkt. 112). In other words, Plaintiff requests that the Court accept a disputed factual allegation at the heart of this case based on nothing more than his personal conclusion about the matter.  Resolution of that question is best left for a later stage of this litigation and nothing currently on the record with this Court substantiates Plaintiff's claim of retaliatory motive. Accordingly, the harassment exception to *Younger* does not apply to Plaintiff's request to have this Court enjoin proceedings on his third bar application.

The filing of Plaintiff's third bar application initiated state judicial proceedings with which this Court may not interfere.  These federal proceedings are at an early stage, and there has been no decisions on the merits as it relates to Plaintiff's as-applied challenge to the Rules, thus the Court may properly abstain and to allow Plaintiff's third application to take its course. Consequently, the State Defendants' Motion to Dismiss is granted with Respect to Plaintiff's as applied challenge to the Rules.

## B. **Plaintiff's ADA and RA claims will not be dismissed.**

Count III of Plaintiff's Complaint asserts claims for unlawful retaliation under the ADA and RA.  V. Compl. p. 44 (Dkt. 1). The State Defendants argue that they are immune from

**ORDER ON STATE DEFENDANTS' MOTION TO DISMISS – 19**

Plaintiff's ADA claim and that his allegations fail to state a plausible claim for relief under either the ADA or RA.  State Defs.' Mem. in Supp. of MTD at 8-10 (Dkt. 81-1).

    1.  <u>The State Defendants are not immune from Plaintiff's ADA claim.</u>

In *Witzke I*, this Court rejected an Eleventh Amendment immunity argument similar to the State Defendants' argument here.  However, the State Defendants have supplied additional authority – *Vartanian v. State Bar of Cal.*, 794 F. App'x 597 (9th Cir. 2019) – that they argue proves their entitlement to Eleventh Amendment immunity.  State Defs.' Mem. in Supp. of MTD at 8-10 (Dkt. 81-1).  Plaintiff, for his part, argues that *Vartanian* does not support the State Defendants' argument and, in any event, it is not precedential.  Pln.'s Resp. to State Defs.' MTD at 11-13 (Dkt. 101).

As in *Witzke I*, this is a close call and the law in this area is far from settled.  Ultimately, the Court is not persuaded that Eleventh Amendment immunity applies because *Vartanian* is not precedential and cannot overcome published precedent in the Ninth Circuit holding that "Title II abrogates a state's Eleventh Amendment immunity."  *Okwu v. McKim*, 682 F.3d 841, 845 (9th Cir. 2012).  That said, *Vartanian* is clearly at odds with *Okwu* as the Ninth Circuit panel in *Vartanian* held that a state bar was immune from suit because Congress has only "validly abrogated state sovereign immunity with respect to Title II of the ADA 'as it applies to the class of cases implicating the fundamental right of access to the courts.'"  794 F. App'x at 600.  Yet, the three-judge panel in *Vartanian* did not find that *Okwu* or any of the cases that opinion relied on had been effectively overruled by subsequent Supreme Court precedent.[9]  Nor has an *en banc* panel of the Ninth Circuit overruled *Okwu*.  Accordingly, this Court is bound to apply that case

---

[9] Indeed, *Vartanian* relied on *Tennessee v. Lane*, 501 U.S. 509 (2004), which was decided about eight years before *Okwu*.  While good-faith arguments can be made that *Okwu* misapplied *Tennessee*, it cannot be said that *Tennessee* "effectively overruled" *Okwu.*

**ORDER ON STATE DEFENDANTS' MOTION TO DISMISS – 20**

unless and until the Ninth Circuit or Supreme Court definitively hold otherwise. *See Miller v. Gammie*, 335 F.3d 889, 899 (9th Cir. 2003) (explaining that district judges and three-judge panels are free to depart from controlling precedent only if that precedent is "effectively overruled" by a subsequent Supreme Court decision that is "closely on point" with the issue presented, or if Ninth Circuit sitting *en banc* overrules the prior precedent). As such, the Court concludes that the State Defendants have not carried their burden to establish an entitlement to Eleventh Amendment immunity.

Moreover, it is unclear whether the State Defendants would be entitled to Eleventh Amendment immunity even under the test in *Vartanian*. To be sure, *Vartanian* cited cases that involved the fundamental right of *physical* access to the courts for individuals with mobility disabilities. *See, Lane*, 541 U.S. at 531 (holding that Title II of the ADA abrogates Eleventh Amendment immunity at least as far "as it applies to the class of cases implicating the accessibility of judicial services"). Yet, the Court sees no reason why *Lane* would not apply with equal force to a claim that a plaintiff's fundamental right to avail themselves of court services by filing a lawsuit was abridged by retaliatory conduct. In other contexts, the Ninth Circuit has found that the fundamental right to access the courts includes the ability to file a lawsuit. *See Ringgold-Lockhart v. Cnty. of L.A.*, 761 F.3d 1057, 1061-62 (9th Cir. 2014) (analyzing a prefiling order for a vexatious litigant and noting that the "right of access to the courts is a fundamental right" along with the "right of the people . . . to petition the Government for a redress of grievances" secured by the First Amendment). Accordingly, to the extent Plaintiff's ADA claim is premised on allegations of retaliation for exercising his fundamental right to file a lawsuit, it is unlikely that the State Defendants are entitled to Eleventh Amendment immunity.

**ORDER ON STATE DEFENDANTS' MOTION TO DISMISS – 21**

2.  Plaintiff has stated a plausible basis for relief on his ADA and RA claims.

Plaintiff alleges that the State Defendants took four retaliatory actions against him because of *Witzke I*: (i) they denied his second bar application, (ii) they imposed unconstitutional delay in processing his second bar application, (iii) they made false allegations to Defendant Brown to get Plaintiff fired, and (iv) they pressured Defendant Brown into firing him based on his decision to file *Witzke I*.  V. Compl. ¶ 147 (Dkt. 1).  The State Defendants assert that none of these bases establish a plausible claim for ADA or RA retaliation because (i) the named individual Defendants did not deny his second bar application, (ii) there were obvious legitimate reasons for denying his application, and (iii) he cannot demonstrate that his filing of *Witzke I* is causally related to Defendant Brown's choice to place him on paid administrative leave.  State Defs.' Mem. in Supp. of MTD at 10-13 (Dkt. 81-1).

The ADA prohibits discrimination against "any individual . . . because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."  42 U.S.C. § 12203(a).[10]  An ADA retaliation claim is evaluated under the *McDonnel-Douglas* burden shifting approach.  *Brooks*, 1 F. Supp. 3d at 1035.  Under that framework, a plaintiff bears the burden of demonstrating a prima facie case of retaliation. *Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 849 (9th Cir. 2004).  If the plaintiff succeeds, the Defendant then must offer a legitimate reason for the adverse employment action.  *Id.*  Once a

---

[10] "Because the ADA was modeled on section 504 of the Rehabilitation Act, 'courts have applied the same analysis to claims brought under both statutes.'"  *Boose v. TriCounty Metropolitan Transp. Dist. of Or.*, 587 F.3d 997, 1001 n.5 (9th Cir. 2009) (quoting *Zukle v. Regents of the Univ. of Cal.*, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999)).  Accordingly, the Court focuses on precedent relating to the ADA but is mindful that it applies with equal force to Plaintiff's RA claim.

**ORDER ON STATE DEFENDANTS' MOTION TO DISMISS – 22**

defendant offers a legitimate reason for the adverse action, the burden shifts back to the plaintiff to demonstrate that the proffered reasons are pretextual.  *Id.*

A prima facie case for retaliation under the ADA requires a showing that the plaintiff "(1) engaged in a protected activity; (2) suffered an adverse employment action; and (3) there was a causal link between the two."  *Id.*  There is no dispute that Plaintiff engaged in protected activity by filing *Witzke I*, thus only the last two elements of the prima facie case warrant discussion.

As an initial matter, Plaintiff's claims that the State Defendants retaliated against him by denying his bar application or delaying his bar application process cannot establish the second element of the prima facie case because those actions are unrelated to his employment.  *See id.* (requiring an adverse *employment* action).  However, to the extent Plaintiff bases his claim on being placed on administrative leave, his allegations plausibly establish the second element of the prima facie case.  *See Hutchins v. DIRECTV Customer Serv., Inc.*, 963 F. Supp. 2d 1021, 1033 (D. Idaho 2013) (assuming without deciding that being placed on paid administrative leave is an adverse employment action).

As for causation, the State Defendants contend that there is no temporal proximity between Plaintiff filing *Witzke I* and Defendant Brown placing him on leave, Plaintiff's leave letter articulates reasons unrelated to filing *Witzke I*, and Plaintiff's allegations are generally incredible.  State Defs.' Mem. in Supp. of MTD at 12-13 (Dkt. 81-1).  None of these arguments are persuasive at the motion to dismiss stage.

The State Defendants' temporal proximity argument misses the mark because it does not account for all of Plaintiff's allegations.  Temporal proximity between a plaintiff engaging in a protected activity and an adverse employment action can be used to establish a prima facie case of retaliation.  *See Brooks*, 1 F. Supp. 3d at 1038.  The State Defendants correctly point out that

**ORDER ON STATE DEFENDANTS' MOTION TO DISMISS – 23**

there is an approximately nine-month gap of time between when Plaintiff filed *Witzke I* (March of 2022) and when he was placed on paid administrative leave (November of 2022).  State Defs.' Mem. in Supp. of MTD at 13 (Dkt. 81-1).  However, Plaintiff alleges that he was not placed on administrative leave until November because around that time settlement negotiations in *Witzke I* broke down and this Court scheduled oral argument on the defendants' motion to dismiss.  V. Compl. ¶ 148 (Dkt. 1).  Thus, by Plaintiff's telling, the State Defendants were not motivated to retaliate against him until it became clear that *Witzke I* was a serious threat.  *Id.*  Framed this way, there is sufficient proximity between Plaintiff pursuing *Witzke I* and him being placed on administrative leave to plausibly establish the third element of the prima facie case at this stage.

The State Defendants' other arguments amount to little more than a request for this Court to refuse to accept Plaintiff's factual allegations as true.  Undoubtedly, the allegations in Plaintiff's complaint are far-fetched and Plaintiff admits that his Complaint reads "kind of like a movie script."  V. Compl. ¶ 174 (Dkt. 1).  That said, their argument that Plaintiff's allegations are simply too implausible to be accepted misunderstands the 12(b)(6) standard.  So long as allegations are not merely conclusions or bare recitations of elements, this Court is bound to accept them as true, even if "they are unrealistic or nonsensical."  *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) (explaining that "[i]t is the conclusory nature of respondent's allegation, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth").  Plausibility, insofar as it is implicated by the 12(b)(6) standard, relates to whether the plaintiff has demonstrated a plausible basis for relief on his or her claims, not whether the allegations supporting those claims are plausible themselves.  *Id.*

To be sure, the State Defendants have articulated legitimate reasons for Plaintiff being placed on administrative leave. State Defs.' Mem. in Supp. of MTD at 12-15 (Dkt. 81-1).

**ORDER ON STATE DEFENDANTS' MOTION TO DISMISS – 24**

However, Plaintiff makes specific factual allegations which, when assumed to be true, establish a plausible basis for relief because they would show that the legitimate reasons for him being placed on leave were pretextual.  For instance, Plaintiff alleges that he overheard Defendant Brown on the phone expressing frustration with *Witzke I* and looking for a reason to end Plaintiff's employment.  V. Compl. ¶¶ 84.  Further, he alleges that Defendant Brown told him, in the presence of two witnesses (and perhaps while being recorded) that his asserted reasons for placing Plaintiff on paid administrative leave were pretextual.  *Id.* ¶¶ 89, 99-100.  Further, Plaintiff alleges that he did not attend the November 9, 2022, Board meeting that he was purportedly removed from and that he has an alibi for that day.  *Id.* ¶¶ 92-97.

While the Court is sympathetic to the State Defendants' position that these allegations are generally incredible, it may not simply shrug them off as too unlikely to be true.[11]  Accordingly, the State Defendants' Motion to Dismiss is denied with respect to Plaintiff's ADA and RA claims because his allegations plausibly establish the prima facie case for ADA/RA retaliation and that any legitimate reasons for placing him on leave were pretextual.

### C. <u>Plaintiff has stated a plausible basis for relief on his § 1983 retaliation claim.</u>

Count IV of Plaintiff's Complaint asserts a § 1983 claim for retaliatory termination in violation of the First Amendment against Defendant Brown and the County Defendants.  V. Compl. ¶¶ 153-67 (Dkt. 1).  The allegations supporting this claim are essentially the same as Plaintiff's ADA and RA claims.  That is, Plaintiff alleges that he was fired because of his pursuit of *Witzke I.  See generally id.*  Likewise, the State Defendants' arguments opposing this claim

---

[11] It should be noted that Plaintiff filed a Verified Complaint, attesting that "under penalty of perjury" the facts alleged in the complaint are "true and correct to the best of his knowledge."  V. Compl. at 60 (Dkt. 1).  Accordingly, Plaintiff may be subject to negative consequences flowing from any representation of facts in the Verified Complaint to which he willfully subscribed while not believing to be true.  *See* 18 U.S.C. § 1621.

**ORDER ON STATE DEFENDANTS' MOTION TO DISMISS – 25**

are similar, asserting that Plaintiff has not shown a temporal connection between being placed on administrative leave and filing *Witzke I* and that there are other obvious explanations for Defendant Brown's decision.  State Defs.' Mem. in Supp. of MTD at 13-16 (Dkt. 81-1).

Establishing a First Amendment retaliation claim requires a plaintiff to show that: (i) "he engaged in protected speech," (ii) his employer took "adverse employment action against him," and (iii) the protected speech "was a substantial or motivating factor for the adverse employment action."  *Dodge v. Evergreen Sch. Dist. #114*, 56 F.4th 767, 776 (9th Cir. 2022) (quoting *Howard v. City of Coos Bay*, 871 F.3d 1032, 1044 (9th Cir. 2017)) (cleaned up).  If the plaintiff establishes a prima facie case, the burden of evidence and persuasion then shift to Defendants "to show that the balance of interests justified the[] adverse employment decision."  *Id.* (citing *Eng v. Cooley*, 552 F.3d 1062, 1074 (9th Cir. 2009)).  In other words, Defendants must show that they had "a legitimate administrative interest in suppressing the speech that outweighed the plaintiff's First Amendment rights."  *Id.* at 776-77.  The State Defendants do not dispute the first two elements of the prima facie case, and only argue that Plaintiff's allegations do not plausibly show that he was placed on administrative leave for filing *Witzke I.*

As with their argument against Plaintiff's ADA and RA claims, the State Defendants assert that Plaintiff cannot show temporal proximity between being placed on administrative leave in November of 2022 and filing *Witzke I* in March of 2022.  State Defs.' Mem. in Supp. of MTD at 13-14 (citing *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1062 (9th Cir. 2013)).  As explained above, this argument does not account for Plaintiff's allegations that subsequent developments in *Witzke I* prompted the alleged retaliation.  And, as above, the Court finds that Plaintiff's allegations plausibly establish the causation element of the prima facie case.

The State Defendants next argue that there is an "obvious alternative explanation" for Defendant Brown's decision to place Plaintiff on administrative leave – Plaintiff made perceived threats to ISB personnel and held himself out as Defendant Brown's staff attorney while litigating *Witzke I*.  State Defs.' Mem. in Supp. of MTD at 14-15 (Dkt. 81-1). An allegation of retaliatory conduct is not plausible when there is an "obvious alternative explanation" for the alleged misconduct.  *Capp v. Cnty. of San Diego*, 940 F.3d 1046, 1055 (9th Cir. 2019). However, where a Plaintiff makes well-pleaded factual allegations that an alternative explanation is false or pretextual, it is enough to survive a motion to dismiss.  *See Herring Networks, Inc. v. AT&T Servs., Inc.*, Case No. 2:16-cv-01636-CAS-AGR, 2016 WL 4055636, at *12-13 (C.D. Cal. July 25, 2016).

As discussed with respect to Plaintiff's ADA and RA claims, Plaintiff makes numerous allegations that the proffered reasons for firing him were pretextual.  These allegations are not mere legal conclusions or bare recitations of the legal test for pretext, they are specific factual allegations that this Court must assume to be true at this stage.  With this in mind, the Court concludes that Plaintiff states a plausible basis for relief on his § 1983 First Amendment retaliation claim because his allegations show that (i) he engaged in protected activity by filing and litigating *Witzke I*; (ii) he suffered an adverse employment action by being placed on administrative leave; (iii) his pursuit of *Witzke I* was a substantial motivating factor in placing him on leave; and (iv) Defendant Brown's reasons for placing him on leave were pretextual. Consequently, the State Defendants' Motion to Dismiss is denied as to Count IV.

D. **Plaintiff has stated a plausible basis for relief on his § 1983 conspiracy claim.**

Plaintiff's final Count asserts a § 1983 conspiracy claim against Defendants Pirtle, Bjorkman, Berry, Wasden, Brown, and the County Defendants.  V. Compl. ¶¶ 168-87 (Dkt. 1).

**ORDER ON STATE DEFENDANTS' MOTION TO DISMISS – 27**

The State Defendants argue that they are entitled to various immunities from this claim and, even if they were not, Plaintiff has not met the plausibility pleading standard.  State Defs.' Mem. in Supp. of MTD at 16-21 (Dkt. 81-1).

    1.  <u>Immunity</u>

The State Defendants claim that Defendants Pirtle and Bjorkman are entitled to quasi-judicial immunity and that Defendants Berry and Wasden are entitled to litigation privilege or qualified immunity.  State Defs.' Mem. in Supp. of MTD at 17-19 (Dkt. 81-1).

*i. Defendants Pirtle and Bjorkman are not entitled to quasi-judicial immunity.*

Since both Defendant Pirtle and Bjorkman were involved in investigating Plaintiff's second bar application, the State Defendants argue they are entitled to quasi-judicial immunity. State Defs.' Mem. in Supp. of MTD at 17 (Dkt. 81-1).  Plaintiff asserts that the State Defendants have not carried their burden to establish an entitlement to quasi-judicial immunity and that they were not performing adjudicative functions when they allegedly fabricated a complaint against him to get him placed on administrative leave.  Pln.'s Resp. to State Defs.' MTD at 15-19 (Dkt. 101).

Whether quasi-judicial immunity applies hinges on "the specific function performed, and not the role or title of the official" who performs it.  *See Scannell v. Wash. St. Bar Ass'n*, Case No. CV 12-00683 SJO, 2013 WL 12423276 at *3 (W.D. Wash. July 1, 2013) (quoting *Miller v. Gammie*, 335 F.3d 889, 897 (9th Cir. 2003)).  Generally speaking, state bar officials are immune from monetary damages "so long as they perform functions similar to judges and prosecutors in a setting like that of a court."  *Hirsh v. Justices of the Supreme Ct.*, 67 F.3d 708, 715 (9th Cir. 1995).  However, this immunity does not extend to investigative activities.  *Delacruz v. State Bar*

*of Cal.*, Case No. 16-cv-06858-BLF (SVK), 2017 WL 7310715, at *3 (N.D. Cal. June 21, 2017) (citing *Khanna v. State Bar of Cal.*, 505 F. Supp. 2d 633, 647 (N.D. Cal. 2007)).

Defendants Pirtle and Bjorkman are not entitled to quasi-judicial immunity for the conduct alleged in the Verified Complaint.  Plaintiff claims that those Defendants were acting outside the scope of their employment with the ISB when they allegedly fabricated a judicial ethics complaint against him.  V. Compl. ¶ 175 (Dkt. 1).  Put differently, Plaintiff claims that those Defendants "conduct[ed] a 'sham' investigation" into Plaintiff that led to him being placed on leave.[12]  *Id.* ¶ 176.  Taking these allegations as true, the conduct Plaintiff alleges falls outside the scope of any quasi-judicial immunity asserted by the State Defendants.

> *ii. Defendants Berry and Wasden are not entitled to litigation privilege.*

Since Defendant Berry and Wasden represented the defendants in *Witzke I*, the State Defendants assert that they are entitled to litigation privilege.  State Defs.' Mem. in Supp. of MTD at 18-19 (Dkt. 81-1).  Plaintiff contends that federal law preempts any assertion of the litigation privilege and that conduct he complains of was not connected with their representation of the defendants in *Witzke I*.  Pln.'s Resp. to State Defs.' MTD at 19-20 (Dkt. 101).

The State Defendants' reliance on "litigation privilege" is misplaced.  The litigation privilege is a state-law defense to claims for civil liability stemming from a lawyer's conduct or statements made in the course of litigation.  *See Taylor v. McNichols*, 243 P.3d 642, 653-54 (Idaho 2010) ("where attorneys are being sued by the opponent of their client in a current or former lawsuit, and that suit arises out of the attorneys' legitimate representation of that client

---

[12] Further, as concerns Defendant Bjorkman, the State Defendants represent that she played no part in the adjudication of Plaintiff's second bar application.  State Defs.' Mem. in Supp. of MTD at 11 (Dkt. 81-1).  With this in mind, it is difficult to see how Defendant Bjorkman could be afforded quasi-judicial immunity for an adjudicative process from which she recused herself.

**ORDER ON STATE DEFENDANTS' MOTION TO DISMISS – 29**

pursuant to that litigation, the privilege does apply").  Although the Ninth Circuit has not

addressed whether Idaho's litigation privilege is preempted by federal law, it has held that

California's litigation privilege statute is preempted to the extent that it is raised as a defense to §

1983 or ADA claims.  *See Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 851 (9th Cir. 2004).

There is no reason to think that the same analysis would not hold with respect to Idaho's

common-law litigation privilege.

     In any event, even if this defense is not preempted, the litigation privilege does not apply

to the conduct alleged in Plaintiff's Complaint.  That is, the litigation privilege only applies to

"actions or communications taken during the course of litigation."  *Van Hook v. Winmill*, Case

No. C22-0347-JCC, 2022 WL 18110866, at *2 (D. Idaho Dec. 16, 2022).  Plaintiff alleges that

Defendants Berry and Wasden falsified an allegation that Plaintiff had to be forcibly removed

from a November Board meeting after threatening Board members.  V. Compl. ¶¶ 92, 95-96, 99,

178 (Dkt. 1).  While Defendants Berry and Wasden may have been representing the defendants

in *Witzke I* at the time they made allegedly false accusations, the accusations were not made

during the course of litigation in *Witzke I*.  Instead, the alleged statements were independent of

that litigation and done to influence Defendant Brown's decision to place him on administrative

leave.  Again, while these allegations are far-fetched, they are not conclusory and must be

accepted as true at this point in time.  Accordingly, the Court finds the litigation privilege

inapplicable here.

     *iii. Defendants Berry and Wasden have not shown an entitlement to qualified immunity.*

     With respect to Defendants Berry and Wasden, the State Defendants argue that they are

entitled to qualified immunity because Plaintiff has not pointed to a clearly established right.

State Defs.' Mem. in Supp. of MTD at 18-19 (Dkt. 81-1).  Plaintiff generally states that the State

**ORDER ON STATE DEFENDANTS' MOTION TO DISMISS – 30**

Defendants have not developed their argument and, therefore, have not carried their burden to establish a qualified immunity defense.  Pln.'s Resp. to State Defs.' MTD at 20-21 (Dkt. 101).

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks and citation omitted).  To be clearly established, a right must be "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015).  While a clearly established right should not be defined at a high level of generality, it does not require precedent exactly on point either. *Id.* at 11-12.  Rather, existing precedent must place "the statutory or constitutional question beyond debate" such that only those government officials who are either "plainly incompetent or . . . knowingly violate the law" are held liable for monetary damages. *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) and *Mallet v. Briggs*, 475 U.S. 335, 341 (1986)).  "Defendants bear the burden to prove they are entitled to qualified immunity." *Greer v. City of Hayward*, 229 F. Supp. 3d 1091, 1106 (N.D. Cal. 2017) (citing *Moreno v. Baca*, 431 F.3d 633, 638 (9th Cir. 2005)).

The parties' arguments on qualified immunity are terse.  The State Defendants' analysis is one sentence long: "There is no 'clearly established' right Plaintiff is claiming Mr. Berry or Mr. Wasden violated."  State Defs.' Mem. in Supp. of MTD at 19 (Dkt. 81-1).  Plaintiff's analysis is similar: "Plaintiff will not guess or speculate on unasserted arguments as part of an inferential leap, the Verified Complaint allegations speak for themselves and satisfy each of the[] elements" for qualified immunity to be inapplicable.  Pln.'s Resp. to State Defs.' MTD at 21 (Dkt. 101).  While the Court is skeptical that a clearly established right is implicated by the novel

**ORDER ON STATE DEFENDANTS' MOTION TO DISMISS – 31**

circumstances of this case, it is ultimately the State Defendants' burden to show an entitlement to qualified immunity, and their conclusory argument does not carry that burden at this stage.[13] Accordingly, the Court finds that Defendants Berry and Wasden are not shielded by qualified immunity.

### iv. Plaintiff properly alleged state action for purposes of his § 1983 claims.

The State Defendants raise a final argument, albeit in a footnote, that casts doubt on of Plaintiff's § 1983 claims. They point out that Plaintiff alleges that Defendants Brown, Wasden, Berry, Pirtle, and Bjorkman "were not acting in the ordinary course and scope of their employment or their official capacities . . . and, as such, formed part of the conspiracy as non-state actors and enjoy no immunity (qualified or otherwise) for their conduct[.]" V. Compl. ¶ 187 (Dkt. 1). The problem here, the State Defendants argue, is that state action is a prerequisite for § 1983 liability. Defs.' Mem. in Supp. of MTD at 16, n. 15, 17 n.17 (Dkt. 81-1).

When pressed on the matter at oral argument, Plaintiff conceded that his allegation about non-state actors was likely an oversight caused by him using a complaint in another civil rights case as a template. Accordingly, Plaintiff disclaimed this allegation in favor of his other allegations that the State Defendants were acting under color of state law when they retaliated against him. V. Compl. ¶¶ 3-7 (Dkt. 1). Given the special solicitude this court affords pro se litigants, it will allow Plaintiff to retract this allegation and proceed to the merits of his § 1983 conspiracy claim. *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (explaining that courts

---

[13] Defendants may reassert these arguments at the summary judgment stage after further factual development. *See NAACP of San Jose/Silicon Valley v. City of San Jose*, 562 F. Supp. 3d 382, 395-96 (N.D. Cal. 2021) (explaining that "the court is inclined to consider defendants' qualified immunity arguments at the summary judgment stage, when the court will have the benefit of a developed factual record. While defendant[] may ultimately prevail on many of the arguments it makes now with respect to qualified immunity, because the qualified immunity analysis often turns on the specific facts of each alleged violation, the court finds that the qualified immunity arguments are better suited to summary judgment.")

**ORDER ON STATE DEFENDANTS' MOTION TO DISMISS – 32**

have an obligation "where the petitioner is *pro se*, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt.") (citing *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)).

      2.  <u>Plaintiff has stated a plausible claim for § 1983 conspiracy.</u>

      As to the merits, the State Defendants contend that Plaintiff's allegations do not state a plausible claim for § 1983 conspiracy. State Defs.' Mem. in Supp. of MTD at 19-21 (Dkt. 81-1). They argue that Plaintiff has neither raised a plausible inference that the State Defendants agreed to deprive him of any constitutional right nor a plausible inference that the various defendants involved in the conspiracy are connected. *Id.* Plaintiff, as is his practice, argues that the allegations in his Complaint are modeled off of the allegations in another complaint that raised a § 1983 conspiracy claim and survived a motion to dismiss. Pln.'s Resp. to State Defs.' MTD at 21 (Dkt. 101) (citing *Bevill v. Fletcher*, 26 F.4th 270 (5th Cir. 2022)).

      Conspiracy is not an independently recognized constitutional tort under § 1983. *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 935 (9th Cir. 2012). Rather, there must be some underlying constitutional violation. *Id.* Consequently, a § 1983 conspiracy claim cannot "enlarge the nature of the claims asserted" by a plaintiff, but it can "enlarge the pool of responsible defendants by demonstrating their causal connections to the violation." *Id.* To prove a § 1983 conspiracy claim, "a plaintiff must show (1) an agreement between the defendants to deprive the plaintiff of a constitutional right, (2) an overt act in furtherance of the conspiracy, and (3) a constitutional deprivation." *Timothy v. Oneida Cnty.*, No. 4:14-cv-00362-BLW, 2015 WL 2036825, at *10 (D. Idaho Apr. 30, 2015) (citing *Gilbrook v. City of Westminster*, 177 F.3d 839, 856-57 (9th Cir. 1999)). The participants in the conspiracy need not know the precise details of the plan, but they must "share the common objective of the conspiracy." *Id.* Since conspiracies are typically

**ORDER ON STATE DEFENDANTS' MOTION TO DISMISS – 33**

secret agreements, their existence may be inferred from circumstantial evidence and evidence of the defendants' actions.  *Id.*  Mere conclusion will not suffice, however, and a plaintiff must "state specific facts to support the existence of the claimed conspiracy."  *Id.* (citing *Burns v. Cnty. of King*, 883 F.2d 819, 821 (9th Cir. 1989)).

The State Defendants' arguments on the merits are not persuasive.  They generally state that Plaintiff's allegations are conclusory, speculative, and do not establish why the various State Defendants would be motivated to conspire against him.  State Defs.' Mem. in Supp. of MTD at 20-21 (Dkt. 81-1).  Plaintiff certainly makes some conclusory allegations like, "[the] Defendants agreed and conspired to retaliate against Plaintiff for his exercise of his first Amendment rights by having Plaintiff terminated from his employment[.]"  V. Compl. ¶ 172 (Dkt. 1). However, Plaintiff has also specifically alleged that (i) he overheard a phone call between Defendant Brown and an unknown person where they spoke about drumming up reasons to terminate Plaintiff and that Defendant Brown had been talking with Defendant Pirtle frequently, *id.* ¶¶ 84, 182; (ii) Defendant Berry spoke with him on the phone about the location of the November 9, 2022, Board meeting from which Plaintiff was purportedly removed, *id.* ¶¶ 95, 180; (iii) Defendant Brown recommended that Plaintiff work from home on November 9, 2022, ostensibly to leave Plaintiff without an alibi, *id.* ¶¶ 93, 179; (iv) Defendants Pirtle and Bjorkman subsequently provided Defendant Brown with a judicial ethics complaint against Plaintiff alleging, among other things, that Plaintiff had to be escorted out of the November 9 Board meeting after making threats, id. ¶¶ 89, 175; (v) Defendants Berry and Wasden corroborated these allegations to Defendant Brown, *id.* ¶¶ 99, 177; and (vi) Defendant Brown subsequently used the false allegations against Plaintiff as the basis for placing him on administrative leave, *id.* ¶¶ 97, 100, 183.  These allegations, while far-fetched, must be accepted as true at this stage.

**ORDER ON STATE DEFENDANTS' MOTION TO DISMISS – 34**

And, in the aggregate, they state a plausible claim for § 1983 conspiracy because they provide circumstantial evidence of an agreement between the State Defendants to "frame" Plaintiff for misconduct and have him placed on administrative leave as retribution for his pursuit of *Witzke I*. Accordingly, the State Defendants' Motion to Dismiss is denied with respect to Count V.

## **CONCLUSION**

The State Defendants' Motion to Dismiss is granted in part and denied in part. Plaintiff's challenges to I.B.C.R. 215(a) and 215(f)(1) fail as a matter of law. The process for adjudicating bar applications may not be perfect. However, the mere fact that the Board possesses wide discretion does not, in and of itself, violate any substantive due process rights or uniformly deprive applicants of procedural due process. Further, Plaintiff has not demonstrated exceptional circumstances that would justify this Court imposing the intrusive equitable relief he requests relating to his third bar application.

That said, Plaintiff's Verified Complaint contains well-pleaded factual allegations which, taken as true, state a plausible basis for liability on his ADA, RA, and § 1983 claims. To be sure, Plaintiff's allegations border on the incredible and he faces a tall task in substantiating those allegations during the ensuing phases of this litigation. However, this Court may not, at the motion to dismiss stage, reject his claims simply because they may appear unlikely.

## **ORDER**

ACCORDINGLY, IT IS HEREBY ORDERED that:

1. The State Defendants' Motion to Dismiss (Dkt. 81) is GRANTED with respect to Counts I and II of Plaintiff's Verified Complaint (Dkt. 1).

**ORDER ON STATE DEFENDANTS' MOTION TO DISMISS – 35**

2.  The State Defendants' Motion to Dismiss (Dkt. 81) is DENIED with Respect to Counts

    III, IV, and V of Plaintiff's Verified Complaint (Dkt. 1) insofar as those Counts allege

    that he was placed on administrative leave due to his filing and litigation of *Witzke I*.

DATED: May 11, 2023

Raymond E. Patricco
Chief U.S. Magistrate Judge